[No. 39283.    Department One.    May 1, 1969.]

ARROW TRANSPORTATION COMPANY, *Respondent,* v. A. O. SMITH COMPANY, *Appellant.**

*Reported in 454 P.2d 387.

*Walsh & Margolis*, by *Harry Margolis*, for appellant.

*Read, Church & Kleweno, Dale W. Read, Warren Cameron, Vergeer, Samuels, Cavenaugh & Roehr*, and *Duane Vergeer*, for respondent.

STAFFORD, J.†—This case arises from an accident which occurred in the state of Oregon on June 29, 1959. At the time, a tanker-truck and trailer unit rounded a gradual curve at a relatively low speed. The trailer, fully loaded with diesel fuel turned over on its side and collided with a passenger automobile. The occupants brought suit in the Oregon courts and recovered a judgment against the Arrow Transportation Company (hereinafter called Arrow), the owner of the equipment.

In the current action, Arrow seeks indemnification from the A. O. Smith Company (hereinafter called Smith) for damages paid out, damages to its trailer, loss of cargo and attorney fees as a result of the subsequent legal action. Smith was not joined in the Oregon case for reasons that are not relevant to this discussion.

Smith is the manufacturer of Smithway fifth-wheels which provide the pivot for turning a trailer's front wheels, absorbs road shock and serves as a stabilizer. Arrow alleges that the accident was caused by a failure of the Smithway fifth-wheel on its trailer.

Prior to 1956, a large number of Arrow's trailers were equipped with Brimhall fifth-wheels. Those fifth-wheels were not manufactured by Smith.

In 1956, Arrow engaged Fruehauf Trailer Company, Inc. (hereinafter called Fruehauf), to build a new trailer. The specifications required a Brimhall fifth-wheel. However,

†Judge Stafford is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

about that time, Arrow began to experience the failure of some of its Brimhall fifth-wheels. Smith, who had purchased the Brimhall Company, proposed three corrective measures to eliminate the failures. These were incorporated in the Smithway fifth-wheel.

The Smithway fifth-wheel consists of two main assemblies: (1) a housing and shock assembly fastened to a trailer's front axle and, (2) a stabilizer assembly fastened to the extreme forward portion of the trailer's under-belly. The assembly fastened to the axle contains a massive vertical metal tube or sleeve which is welded to the base plate. The upper stabilizer assembly is concentric with and partly fits within the vertical metal sleeve to permit swiveling. A vertical king-pin joins the two units.

Arrow, apparently unfamiliar with Smith or its product, employed Metallurgical Engineers, Inc. (hereinafter called Engineers), to investigate the Brimhall fifth-wheel failures. The Engineers indicated in their 1956 "Evaluation of Fifth-Wheel Design" report that they also were engaged:

[F]or the purpose of evaluating certain stated design changes. The design changes were intended to eliminate the failures.

They also made the following observation about their 1956 assignment:

As a result of these failures [of the Brimhall fifth-wheels] the manufacturer [Smith who had purchased Brimhall] proposed the corrective measures summarized in the conclusions.

The Engineers' report of September, 1956, does not specifically refer to an evaluation of the Smithway fifth-wheel design. However, their report of August, 1959, which followed the current accident, makes it abundantly clear that the 1956 evaluation was made with a Smithway fifth-wheel in mind.

The 1959 report specifically referred to the Smithway fifth-wheel which had failed and referred back to the 1956 report as follows:

5. The fatigue failure of this inner stabilizer tube *reaffirmed a conclusion* in our Reference No. 14766 dated 9-5-56, *that the fifth wheel unit* was manufactured with an insufficient safety factor.

(Italics ours.) For their 1959 findings about a Smithway fifth-wheel to *reaffirm* an earlier conclusion about *"the* fifth wheel unit" the Engineers could have referred only to another Smithway.

The 1959 report continued to refer back to the 1956 study as follows:

In September, 1956, our Engineering Laboratory was requested to evaluate the design of *this same type of fifth wheel.* ["This same type of fifth wheel" can only refer to a Smithway because that is the only type of wheel with which the 1959 report is concerned.] In our report Reference No. 14766 [The September 1956 report.], we concluded that *such a unit* [a Smithway unit] *would not have the necessary safety factor to withstand the service loads which were causing the fatigue fractures of the tubes.* [These fractures were the ones found on the Brimhall fifth wheels.] This conclusion was reaffirmed by the failure of the tube [the tube on the Smithway fifth-wheel in the instant case] in this accident.

(Italics ours.) There is nothing in the 1959 report to indicate that the Engineers contemplated any fifth-wheel other than a Smithway in the 1956 report.

The record indicates that the 1956 report decided that the Brimhall fifth-wheel failure had been caused by steady, repetitive, heavy loads on the fifth-wheel unit, which in turn gave rise to a progressive failure through metal fatigue. In their report, the Engineers compared the Brimhall fifth-wheel with the three corrective design changes found in the Smithway fifth-wheel and gave their analysis of the effect of the design changes.[1] After considering the design

---

[1] 2. The effect of the design changes is as follows:

| Design Change | Percent Increase in load-carrying capacity. |
|---|---|
| a. Change in material to Cor-Ten steel. | No increase. The present steel was of a hardness equivalent to a tensile strength of 72-75,000 pounds per square inch. |

changes and their effect, the Engineers concluded:

> [T]*he maximum improvement to be expected* in the load-carrying capacity as a result of the design changes, is *eighteen percent. This is not sufficient to obtain the necessary safety factor in this unit.*

(Italics ours.)

Arrow received the first Engineers' report in September of 1956. There is no evidence that they furnished Smith with any of the information contained therein or that they had any contact with Smith until after the accident in June of 1959.

Shortly after receiving the foregoing information, Arrow instructed Fruehauf to substitute a Smithway fifth-wheel for the Brimhall that had been specified earlier. Pursuant to Arrow's instructions, Fruehauf installed the Smithway fifth-wheel and shipped the trailer to Arrow in October, 1956. Thereafter, Arrow phased out all its Brimhalls and replaced them with Smithway fifth-wheels.

Arrow used the trailer outfitted with the Smithway unit for over 2½ years, during which time the equipment traveled nearly 197,000 miles. At no time did Arrow inspect the inner vertical metal tube to determine whether it had developed a fatigue fracture.

Two and one-half months prior to the accident, the fifth-wheel, involved in the present case, developed a crack in the lower housing which contains the inner vertical metal tube. Arrow had a metal plate welded to the under side of the housing to repair the break. Smith was not consulted.

After the accident, Arrow's maintenance crew found that the inner vertical metal tube in the lower housing had

| | | |
|---|---|---|
| b. | Increase in thickness of wall from 9/32-inch to 11/32-inch. | Maximum increase, 18 percent. The actual increase may be zero if a double fillet weld is not used. (See Figure 2). |
| c. | Increase in axle deflection from 3¼ inches to 6 inches. | No substantial reduction in loads. The increase in unbalance at the greater axle deflections counteracts the dynamic effect of "bottoming" with the shorter deflection. (See Figure 4). |

broken away from the base plate. The Smithway fifth-wheel was then sent to the Engineers for a report on the cause of the failure. Their report, submitted in August of 1959, contained the following observation:

> 1. The inner steel tube of the frame assembly had failed just above the weld to the fifth wheel frame through a *fatigue type fracture.* This fracture had been occurring over a considerable period of time and the final rupture had occurred some time prior to the time of the accident. The above was verified by visual indications . . . ."

(Italics ours.) Further, the report went on to say, in essence, that 3 years prior to the current accident (*i.e.* 1956) the Engineers evaluated the same type of fifth-wheel for Arrow. They point out that even at that early date Arrow was informed that a Smithway fifth-wheel unit would not provide the necessary safety factor to withstand the service loads which were causing the fatigue fractures being suffered by Arrow. In summation, the Engineers said, "This conclusion was reaffirmed by the failure of the tube in this accident." (*i.e.* 1959)

Based upon the foregoing information, the trial court entered judgment in favor of Arrow. Smith appeals.

Smith contends that the trial court erred in making findings of fact Nos. 4 and 6. They will be discussed together because they present similar issues.

Finding of fact No. 4 reads in part as follows:

> The Defendant, *by such design, manufacture and sale, did warrant* that the said fifth wheel was *reasonably fit for its intended use* as an integral part of the trailer . . .; and *Plaintiff reasonably relied upon such warranty.*

(Italics ours.)

Finding of fact No. 6 reads in part:

> The particular fifth wheel, either by reason of *defective design or defective manufacture* . . . , had a latent defect. . . . Plaintiff did not know of such defect, and the normal and reasonable maintenance and inspection provided by the Plaintiff . . . could not disclose such defect. The defect caused the "stabilizer" tube in the said

fifth wheel to become weakened and to break . . . and was the . . . *proximate cause of the* . . . Plaintiff's damages.

(Italics ours.)

Counsel have stipulated that this is a case of "implied warranty" unless Smith's brochure entitled "Smithway '5th Wheel' Trailer Suspension" amounts to an "express warranty."

Arrow maintains that the brochure created an aura of reliance. However, there is no evidence to support an inference that anyone at Arrow saw the brochure prior to the accident; or that any information contained therein induced Arrow to acquire the Smithway fifth-wheel.

■ Before one may recover from a manufacturer for a loss allegedly based upon a breach of an express warranty contained in an advertisement, he must demonstrate that he justifiably relied upon some statement contained in the advertisement. *See* 2 R. Hursh, American Law of Products Liability § 7:13 (1961); Restatement (Second) of Torts § 402B, comment *j*, at 362 (1965). In the present case, Arrow has failed to prove that anyone connected with them even knew of the brochure prior to the day of trial. Therefore, no reliance thereon has been established.

■ Next, Arrow contends that Smith impliedly warranted that the fifth-wheel was reasonably fit for its intended use. They assert that Smith had superior knowledge and that Arrow's unequal footing made it reasonable for them to rely upon the alleged implied warranty. In support of that proposition, Arrow cites *Kasey v. Suburban Gas Heat of Kennewick, Inc.,* 60 Wn.2d 468, 374 P.2d 549 (1962), wherein the court stated at 472:

The act of purchase and use of a product manufactured for that use is evidence of reliance on the skill and judgment of the manufacturer; and, in the absence of evidence to the contrary, meets the requirement of reliance.

Although we recognize the general rule announced in *Kasey*, the instant case falls within an exception to that rule. We find undisputed evidence that Arrow did not, in fact, rely on the skill and judgment of Smith.

Before Arrow ordered the Smithway fifth-wheel in 1956, the Engineers, who studied the Brimhall failures and the Smithway design changes at Arrow's request, had informed them that the design gave a *maximum* improvement in load-carrying capacity of only 18 per cent over the Brimhall fifth-wheels. The Engineers added "This is not sufficient to obtain the necessary safety factor in this unit." As indicated by the 1959 report, the Engineers even went further in their warning:

> In our report . . . , we concluded that *such a unit would not have the necessary safety factor to withstand the service loads which were causing the fatigue fractures of the tubes.*

(Italics ours.) The information furnished Arrow by the Engineers was clear and explicit. From the report, they were aware that due to inadequate design the Smithway fifth-wheel was *not* reasonably fit for Arrow's intended use. Despite this knowledge, Arrow instructed Fruehauf to install the Smithway fifth-wheel on its trailer.

One cannot shut his eyes to important evidence that an article is unfit for his purpose and thereafter recover damages for losses caused by the same defect. *See Nationwide Mut. Ins. Co. v. Don Allen Chevrolet Co.,* 253 N.C. 243, 116 S.E.2d 780 (1960). This is particularly true where, as here, the knowledge of the injured party is equal or superior to that of the manufacturer. *See* 1 S. Williston Sales, § 234 (rev. ed. 1948). Under such circumstances, he cannot "secretly rely" upon the skill and judgment of the manufacturer. *McCormick v. Hoyt,* 53 Wn.2d 338, 333 P.2d 639 (1959). Arrow did not reasonably rely upon an implied warranty of fitness where, as here, it exercised its own judgment.

■ Without question, the Smithway fifth-wheel failure was caused by a "fatigue fracture" of the vertical metal inner tube. However, this, standing alone, does not establish a defect in manufacture. There is nothing in the record to indicate that the Smithway fifth-wheel departed, in any way, from the original design which caused the Engineers

to inform Arrow of the inadequate safety factor in the Smithway to withstand their service loads. At best, the fifth-wheel was inadequately designed for Arrow's use, but the inadequacy was one about which Arrow had been fully informed. Furthermore, a "fatigue failure" about which one is fully warned can hardly be classed as a latent defect. A latent defect is one which could *not* have been discovered by inspection. *Hyde v. Bryant,* 114 Ga. App. 535, 151 S.E.2d 925 (1966).

Therefore, the trial court erred in finding that Arrow had reasonably relied upon an implied warranty of fitness and that there was a defect in manufacture.

Arrow also contends that it is unnecessary to prove that a product failed as a result of a latent defect in order to prove breach of warranty. They cite *Tremeroli v. Austin Trailer Equip. Co.,* 102 Cal. App. 2d 464, 227 P.2d 923 (1951) for the proposition that it is sufficient to prove that the fifth-wheel failed in normal use. However, that case is not in point. In *Tremeroli,* the alleged defect was truly latent and the plaintiff was an innocent user entirely without knowledge. Here, although Arrow's *trailer* may have been employed in the normal use of transporting heavy loads, the question that concerns us is whether the Smithway fifth-wheel was employed in the normal use for which *it* was designed.

Arrow had been informed that the service loads to which they intended to subject the fifth-wheel were "causing the fatigue fractures of the tubes." When they chose to use the Smithway fifth-wheel *despite* that knowledge, and when the tube failed from a predicted "fatigue fracture", it cannot be said that the fifth-wheel failed in *normal* use. The fifth-wheel failed while being used beyond the scope of its known designed safety factor.

The judgment is reversed and the trial court is instructed to enter a judgment of dismissal.

WEAVER, ROSELLINI, HALE, and McGOVERN, JJ., concur.

ROSELLINI, J. (concurring in the result)—I concur in the holding that, as a matter of law, there was no reliance, and since this case was tried on the theory of implied warranty under the sales act, I concur in the result. Had it been tried on a theory of strict liability, and had that theory been held applicable, the result would probably have been the same; but the question would have been whether Arrow unreasonably assumed the risk. (See the discussion on this point in *Brown v. Quick Mix Co., ante* p. 833, 454 P.2d 205 (1969).)

I do not agree with the dictum in the majority opinion which states, as a matter of law, that the Smithway fifth-wheel was not in normal use at the time of the accident. The term "normal use" means the use for which the product is sold, it seems to me. As far as I can determine, the device was sold for use on the trailers on which it was installed, and was designed to be used on such trailers. Therefore, in my opinion, it was put to normal use. The fact that it was inadequate for such use does not render the use abnormal. I would eliminate this dictum from the opinion.