Donald WINKLER, Plaintiff-Appellant,

v.

**AMERICAN SAFETY EQUIPMENT CORPORATION, a New York corporation, Defendant-Appellee.**

**No. 78–312.**

Colorado Court of Appeals, Div. II.

Sept. 20, 1979.

Rehearing Denied Nov. 1, 1979.

Certiorari Granted Jan. 7, 1980.

Holm & Dill, P. C., Kim H. Peterson, Douglas R. Manley, Denver, for plaintiff-appellant.

Tilly & Graves, Ronald O. Sylling, John W. Grund, Denver, for defendant-appellee.

SMITH, Judge.

In this personal injury action, one theory of recovery asserted by Plaintiff, Donald Winkler, was misrepresentation by a seller of chattels to a consumer as expressed in the *Restatement (Second) of Torts* § 402B (1965). The court refused Winkler's tendered jury instruction based upon this theory. From a defendant's verdict, Winkler appeals. We reverse.

Donald Winkler was an officer in the Denver Police Department. As permitted by department policy, he obtained for his own personal use, a helmet which, because of its appearance, had been discarded by the department. The helmet, manufactured by the defendant, American Safety Equipment Corporation, was originally purchased by the Denver Police Department for use in crowd or riot control. It was originally packaged in a carton which depicted a motorcyclist wearing the seller's helmet. Winkler prior to acquiring his helmet had become familiar with the cartons in which they were originally delivered. Believing that the helmet was intended for motorcycle use, Winkler used the helmet for that purpose. While riding his motorcycle, he collided with a pickup truck. Upon impact, the helmet, performing as designed, i. e., for quick release, came off of his head, and as a result he suffered head injuries. Although the helmet performed as designed, Winkler claims that it did not perform as represented on the packaging carton, that is, as a motorcycle helmet. It is this asserted misrepresentation upon which Winkler bases a cause of action under § 402B.

### I.

The imposition of strict liability in products liability cases is not foreign to Colorado. Our Supreme Court in *Hiigel v. General Motors Corporation*, 190 Colo. 57, 544 P.2d 983 (1976) expressly adopted the doctrine of strict liability in tort as defined in the *Restatement (Second) of Torts* § 402A (1965) which imposes strict liability upon sellers of products defective in their design or manufacture. The *Restatement (Second) of Torts* § 402B on the other hand imposes strict tort liability upon sellers of products which are *not* defective in design or manufacture, but which are misrepresented to the consuming public.

Section 402B reads as follows:

One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though

(a) it is not made fraudulently or negligently, and

(b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

Under § 402B the seller of chattels who misrepresents material facts concerning their character or quality is subject to lia-

bility for the physical harm caused to a consumer who relies on the misrepresentation. This rule has evolved because a consumer, out of necessity, must rely upon the representations made by sellers when he makes his purchase decision. Green, *Strict Liability Under Sections 402A & 402B: A Decade of Litigation*, 54 Tex.L.Rev. 1185 (1976).

Thus, when a product fails to perform to the level, or in the manner that the consumer has been led, by the seller, to believe it will, and that failure causes physical harm, the seller is liable for that harm. Liability under § 402B does not, however, depend upon the factors giving rise to the misrepresentation, nor does it require contractual privity normally associated with warranty. It is a rule of strict liability, which, even in the absence of bad faith or negligence, makes sellers liable if a consumer of their product suffers physical harm as a result of justifiable reliance on the seller's misrepresentation.

In a complex society where sellers offer apparently similar but in reality fundamentally different products, the rationale behind the rule is most persuasive. It is the manufacturing seller who knows the capabilities of his products, for he is the one who has designed and tested them. The consumer, on the other hand, knows only the information he has been able to glean from the seller's marketing material. Logic dictates, then, that the seller should bear the responsibility for his misrepresentation because of his superior knowledge. That this is the logic of the rule is evidenced by the fact that the rule applies only to those engaged in the business of selling, *Restatement, supra, Comment e*, and thus, excludes the casual seller who cannot be expected to know the capabilities of the product to any greater extent than the consumer.

Imposing strict liability upon sellers who misrepresent their products does not create an undue burden upon them. Rather, the rule merely mandates that in order to gain the economic benefits a seller can expect to receive from the representations it makes to the public, the seller must likewise assume the economic consequences for the physical harm resulting from even inadvertent misrepresentations it has made about the products. To permit sellers to benefit from representations made to the public, and at the same time to relieve them of liability for errors in their representations would be to allow them to avoid an integral part of the appropriate costs of manufacturing and marketing their products. Hence, the adoption of § 402B would not only promote a sound policy for Colorado, but would do so in keeping with the philosophies previously expressed by the Supreme Court in *Hiigel, supra*. And, therefore, we adopt this theory of recovery as stated in *Restatement* § 402B, *supra*.

■ Here, Winkler established a prima facie cause of action based on § 402B for misrepresentation by a seller of chattels. The carton from which the helmet or similar helmets came depicted a motorcyclist using the helmet. This illustration constituted a representation, and its materiality, and whether it was relied upon, were questions for the jury.

■ Section 402B requires that the misrepresentation be made to the public. *Restatement, supra, Comment h*, indicates that if a misrepresentation is intended to reach the public, or indeed does reach the public, the rule will be applied. We hold that a misrepresentation has been made to the public when a seller, as part of his merchandising program, communicates the misrepresentation to potential purchasers or users of his product, even when they constitute only a small or a select portion of the consuming public.

■ The fact that the merchandising effort is aimed at governmental bodies, such as police departments, is of no import in determining whether the misrepresentation is public. The key factor is that the misrepresentation is made as part of the merchandising of the product. Once a misrepresentation is made to the public, any user who justifiably relies upon the misrepresentation and suffers physical harm as a result thereof may recover.

In the instant case, advertising literature as well as the packaging box depicting a motorcyclist wearing a helmet were admitted into evidence. The literature disclosed that the helmets were available for individual purchase directly from the defendant, and there was also testimony that the helmets were available from at least one local sporting goods distributor. Therefore, we conclude that the representations concerning the product were indeed made to the public.

That Winkler did not purchase the helmet from the defendant is not a defense because § 402B applies "even though . . the consumer has not bought the chattel from or entered into any contractual relation with the seller." It is the reliance upon the seller's misrepresentation that gives rise to the cause of action under this rule and not privity of contract.

For the foregoing reasons, we conclude that the trial court erred in refusing to instruct the jury regarding Winkler's claim for relief based on misrepresentation of a chattel under the *Restatement (Second) of Torts* § 402B.

## II.

Winkler also asserts that the trial court erred by improperly instructing the jury regarding proximate cause. We agree.

Using the wording of *Colo. J.I.* 9:24, the trial court instructed the jury: "Proximate cause means *that* cause which in natural and probable sequence produced the claimed injury . . . ." (emphasis added) This instruction should be used only when there is a single cause and the issue is whether it was *the* proximate cause. *Reaves v. Horton,* 33 Colo.App. 186, 518 P.2d 1380 (1973), *rev'd in part on other grounds,* 186 Colo. 149, 526 P.2d 304 (1974). Because the jury here could have found that more than one cause was operative at the time of the injury, the trial court erred in failing to instruct the jury in accordance with *Colo. J.I.* 9:26, an instruction which is couched in terms of "a cause" rather than "that cause" of the injury.

The judgment is reversed and the cause is remanded for a new trial.

ENOCH, C. J., and PIERCE, J., concur.