Nancy J. WERKMEISTER,
Plaintiff-Appellant,

v.

ROBINSON DAIRY, INC.,
Defendant-Appellee.

No. 81CA0483.

Colorado Court of Appeals,
Div. I.

July 28, 1983.

Grant, McCarren & Bernard, Richard N. Lyons, Longmont, for plaintiff-appellant.

Zarlengo, Mott & Zarlengo, Donald E. Cordova, Denver, for defendant-appellee.

BABCOCK, Judge.

In this wrongful death action, the plaintiff, Nancy J. Werkmeister (widow), appeals from the adverse judgment entered on the jury verdict. She asserts that the trial court erred in denying her motion for leave to file an amended complaint and in granting partial summary judgment in favor of the defendant, Robinson Dairy, Inc. (dairy). We affirm.

Widow's husband was fatally injured in a collision between an automobile which he was driving and a milk truck owned by W.P. & G. Distributing Company (distributor) and driven by one of its employees. She sought damages for wrongful death against the dairy upon a theory of vicarious liability, alleging a master-servant relationship between the dairy and the distributor.

In June 1980, widow filed an amended complaint alleging a second claim of vicarious liability upon a theory of joint venture and a third claim of vicarious liability upon a theory of "common enterprise."

In the court's "setting order" it was directed that discovery be completed by January 2, 1981, that a pretrial conference be held on February 2, 1981, and that jury trial commence on February 20, 1981.

On December 22, 1980, widow filed a motion for leave to file a second amended complaint which set forth an alternate fourth claim for relief, alleging that the distributor was the independent contractor of the dairy, and that the distributor, in delivering milk, was performing an "inherently dangerous" activity, which rendered the dairy liable for the tort committed by its employee in the operation of the dairy truck. The dairy filed a motion for summary judgment on December 23, 1980.

Widow's motion to amend and the dairy's motion for summary judgment were heard at the pretrial conference. The motion to amend was supported by the affidavit of an expert who concluded that the operation of a heavy truck on the highways of Colorado constituted an ultrahazardous activity. He based his conclusion upon statistical frequency of fatalities involving such vehicles and upon principles of physics concerning the dissipation of energy generated by the weight and velocity of the truck. With trial imminent, the dairy objected to the motion to amend upon the ground that it would be necessary to depose the widow's expert and arrange for expert testimony in defense. The trial court gave the widow the option of filing the amended complaint and continuing the trial date to allow the dairy time for additional discovery and trial preparation, or to proceed with the trial as scheduled. The widow chose the latter, and the court denied the motion for leave to amend.

The court then granted the dairy's motion for summary judgment upon the second and third claims, but denied it as to the first claim which was premised on an alleged master-servant relationship. Trial to the jury resulted in a verdict in favor of the dairy.

The widow asserts that the trial court erred in denying her motion to amend. In addition, she asserts two grounds for reversal of the summary judgment: First, she claims that an issue of fact remained for jury determination as to the joint venture relationship between the dairy and the distributor. Second, she asserts that the doctrine of "enterprise liability" should be adopted as a matter of law by the courts of this state and that an issue of fact was presented by this theory.

## I. *Motion to Amend*

The granting of a motion to amend a complaint is within the discretion of a trial court, not to be disturbed unless an abuse of discretion is shown. *H.W. Houston Construction Co. v. District Court*, 632 P.2d 563 (Colo.1981); *K–R Funds, Inc. v. Fox*, 640 P.2d 257 (Colo.App.1981).

Leave to amend shall be freely given when justice so requires. C.R.C.P. 15(a); *H.W. Houston Construction Co. v. District Court, supra.* If the opposing party can demonstrate prejudice to it, the denial of a motion to amend is an appropriate exercise of discretion *K–R Funds, Inc. v. Fox, supra.*

■ Here, the motion to amend was filed shortly before the trial date and on the eve of the discovery cut-off date. The amended claim tendered by widow was to be supported by expert testimony. This would require additional discovery by the dairy and possibly the presentation by it of independent expert testimony. Therefore, we conclude that the dairy demonstrated prejudice and that the trial court acted within its discretion in offering widow the option of proceeding with trial as scheduled or filing the additional claim and continuing the trial date.

## II. *Summary Judgment*

■ Summary judgment may only be granted if the pleadings, admissions, depositions, answers to interrogatories, and affidavits establish that no genuine issue exists as to any material fact and that judgment should be entered as a matter of law. C.R.C.P. 56(c). Summary judgment is a drastic remedy granted only upon a clear showing that there is no genuine issue as to any material fact, with the trial court to resolve all doubt thereon against the moving party. *Jones v. Dressel,* 623 P.2d 370 (Colo.1981). The salutary purpose of summary judgment, where appropriate, is to avoid the expense and delay of trials upon claims which a party is unable to support by disputed contentions of fact. *Norton v. Dartmouth,* 147 Colo. 436, 364 P.2d 866 (1961). Partial summary judgment may be given in a proper case. C.R.C.P. 56(d); *City of Westminster v. Church,* 167 Colo. 1, 445 P.2d 52 (1968).

## A. Joint Venture

■ The widow alleged in her second claim that a joint venture relationship existed between the dairy and the distributor thereby rendering the dairy vicariously liable for the negligence of the distributor's employee. The elements of joint venture are as follows: (1) joint interest in property among the alleged joint venturers; (2) express or implied agreement to share in profits or losses of the joint venture; and (3) actions and conduct showing cooperation in the project. *Edwards v. Price,* 191 Colo. 46, 550 P.2d 856 (1976).

■ The following facts were undisputed. Neither the dairy as a corporate entity, nor any of its officers, directors, or shareholders, as individuals, owned any property interest in the distributor corporation or in any way exercised any authority or control over the distributor. The converse was true as to the distributor in its corporate capacity and as to its officers, directors, and shareholders. There was no express agreement to share in profits or losses of the alleged venture.

The facts, viewed favorably to the widow, further establish that distributor purchased milk from the dairy for resale and delivery to its customers. In a number of instances the distributor's customers would be billed by the dairy and when paid, the dairy would credit the distributor's account. In addition, for years the distributor had maintained an account payable to the dairy averaging approximately $20,000–$25,000. Before the accident there was a sale and purchase of the distributor's stock. A "gentlemen's agreement" was then struck between the new owner and the dairy acknowledging that the account payable would not be collected by the dairy as long as it did not exceed that average amount.

Widow contends that these factors establish the implied agreement to share the profits or losses of the alleged joint venture. She argues that the dairy was "bank rolling" the distributor and that the bookkeeping procedures of the dairy reflect a division of profits. We conclude that reasonable, intelligent persons could infer from these facts only that the account payable is evidence of a debtor-creditor relationship between the dairy and the distributor and that the billing procedures are a bookkeep-

ing means to reflect the cash flow of each corporate entity. *See Moon v. Platte Valley Bank,* 634 P.2d 1036 (Colo.App.1981).

Moreover, nothing in the record reflects any joint interest in property between the dairy and the distributor. Widow's reliance upon *Murry v. Western American Mortgage Co.,* 124 Ariz. 387, 604 P.2d 651 (1980) and *Bassett v. Baker,* 530 P.2d 1 (Utah 1974) is misplaced. While these courts refer to the interest as a "community of interest" rather than "joint interest" in property, they maintain the requirement that the parties must combine their property, money, and effects in furtherance of the venture. There is no genuine issue of fact in this case that assets were so combined. And, to the extent widow seeks to liberalize this element of a joint venture in Colorado, we decline to adopt such a rule.

While the record does reflect questions of fact concerning actions and conduct showing cooperative action between dairy and distributor, there was no genuine issue as to any material fact concerning the two remaining elements of joint venture. Therefore, we conclude that the entry of summary judgment upon the issue of joint venture was proper.

### B. "Enterprise Liability"

Widow urges in this case that we adopt the theory of "enterprise liability" as a substantive cause of action. We decline to do so.

"In its broadest terms the theory of enterprise liability in torts is that losses to society created or caused by an enterprise or, more simply, by an activity, ought to be borne by that enterprise or activity. Stated somewhat more precisely, the theory contemplates that losses historically recognized as compensable when caused by an enterprise, or activity, such as producing, distributing and using automobiles, ought to be borne by those persons who have some logical relationship with that enterprise or activity."

Klemme, *The Enterprise Liability Theory of Torts,* 47 *U.Colo.L.Rev.* 153 at 158 (1976).

The enterprise theory of liability is an analytical tool. We recognize that the theory has been relied upon in part by the courts of this state in the analysis of other substantive causes of action. For example, this theory was referred to explicitly in *Wright v. Creative Corp.,* 30 Colo.App. 575, 498 P.2d 1179 (1972), when we rejected the application of strict liability to mass producers of homes. The theory was implicit in the adoption of the doctrine of strict liability defined in *Restatement (Second) of Torts* § 402A (1965). *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.,* 33 Colo.App. 99, 517 P.2d 406 (1973); *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975); *see also Anderson v. Heron Engineering Co.,* 198 Colo. 391, 604 P.2d 674 (1979).

The clearest illustration of reliance upon the theory of enterprise liability as one facet of the rationale upon which a substantive cause of action may be adopted is *Winkler v. American Safety Equipment Corp.,* 43 Colo.App. 241, 604 P.2d 693 (1980). There we adopted the rule of *Restatement (Second) of Torts* § 402B (1965), which imposes strict liability upon sellers of products which are not defective in design or manufacture, but which are misrepresented to the consuming public. Our rationale in this regard was expanded by the Colorado Supreme Court in its approval of the adoption of *Restatement (Second) of Torts* § 402B (1965). *American Safety Equipment Corp. v. Winkler,* 640 P.2d 216 (Colo.1982).

The theory of enterprise liability does not constitute a distinct cause of action. Thus, here, the dairy was entitled to judgment as a matter of law upon widow's third claim for relief, regardless of the state of the facts before the trial court. The trial court did not err in so ruling.

Judgment affirmed.

PIERCE and VAN CISE, JJ., concur.