276 So.2d 475 (1973)
Donald ROSTOCKI and Mary Jane Rostocki, Deceased, Petitioners,
v.
SOUTHWEST FLORIDA BLOOD BANK, INC., a Florida Corporation Not for Profit, Respondent.
No. 42183.
Supreme Court of Florida.
February 28, 1973.
Rehearing Denied April 30, 1973.
Richard H. Wilson and Ollie Ben Butler, Jr., Tampa, for petitioners.
A. Broaddus Livingston and William F. McGowan, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Second District, reported at 259 So.2d 553. Our jurisdiction is based upon conflict between the *476 decision sought to be reviewed and Green v. American Tobacco Co.[1] and Mercy Hospital, Inc. v. Benitez.[2]
Plaintiffs, petitioners herein, filed a complaint against defendant, respondent herein, to recover damages for personal injuries sustained when Mary Jane Rostocki contracted the disease serum hepatitis, from a blood transfusion involving impure and unfit blood sold by the defendant to the plaintiffs. Plaintiffs sued the defendant on a strict liability theory under the implied warranties of merchantability and fitness for a particular purpose. Defendant raised as an affirmative defense, inter alia, that the disease virus was undectable and unremovable at the time of the sale and should therefore preclude the application of strict liability.
The cause was tried before a jury and at the close of all of the evidence, the trial court held as a matter of law that strict liability based on implied warranty does not apply to the sale of blood where the blood is contaminated by an undetectable and unremovable virus such as serum hepatitis. Finding no claim of express warranty or negligence, the trial court, relying upon Jackson v. Muhlenberg Hospital, 96 N.J. Super. 314, 232 A.2d 879 (1967), aff'd 53 N.J. 138, 249 A.2d 65 (1969), granted defendant's motion for a directed verdict. On appeal, the District Court of Appeal affirmed per curiam without opinion.
We are aware of the fact that the law in most jurisdictions is that the handling of blood is a service not subject to strict liability as opposed to a sale. This has also become the law in Florida with the passage of Florida Statutes § 672.316(5), F.S.A. This section, however, was adopted after this cause of action arose and is not determinative of this case.
Turning to the law as it existed when this cause of action arose, we find that the decision of the District Court is in error. First, it has been held that where a blood bank transfers the title to its product to a patient in return for a consideration, it is a sale and not a service.[3] Secondly, as pointed out by Justice Roberts in his concurring opinion in Community Blood Bank, Inc. v. Russell, blood supplied for the purpose of a blood transfusion:[4]
"[I]s a product `intended for human consumption' quite as much as a vaccine, cf. Gottsdanker v. Cutter Laboratories [182 Cal. App.2d 602, 6 Cal. Rptr. 320]... or a food product; and it is well settled in this jurisdiction that the manufacturer or producer of a product intended for human consumption or intimate body use is held strictly liable, without fault, for consequential injuries to a consumer or user resulting from a defect in such product."
Finally, the trial court's holding that this blood transfusion involved a product which is unavoidably unsafe "runs counter to the very basis of the strict or implied warranty theory of liability  that is, liability without fault  and is in direct conflict with the decision of this Court in Green v. American Tobacco Co.,"[5] supra, and Mercy Hospital, Inc. v. Benitez, supra.
In Mercy Hospital the District Court of Appeal, Third District, finding that a blood transfusion was a sale and not a service, affirmed the trial court's application of a warranty of fitness theory to a situation similar to the instant case.
In Green, a cigarette manufacturer was held liable for injuries resulting from the use of its product, even though the harmful effects of the product were not and could not have been known by the manufacturer. *477 Our decision in Green made it abundantly clear that "a manufacturer's or seller's actual knowledge or opportunity for knowledge of a defective or unwholesome condition is wholly irrelevant to his liability on the theory of implied warranty ..."[6]
The trial court's reliance upon McLeod v. W.S. Merrill Co.,[7] and the Restatement of Torts[8] in finding a blood transfusion to be unavoidably unsafe is misplaced. McLeod and the Restatement, as pointed out by Justice Roberts, have no application to the sale of blood. In McLeod, a retail druggist was sued by a patient-purchaser for the sale of a drug which produced harmful effects on the purchaser. We held that the druggist could not be held liable for a breach of implied warranty of merchantability because the drug was unadulterated, nor for a breach of warranty of fitness because the purchaser had relied upon the prescribing physician. The distinguishing feature of the McLeod case and the Restatement from the sale of blood is that blood is not an "unadulterated" product. Quoting again from Justice Roberts' concurring opinion in Community Blood Bank:[9]
"There is a clear distinction between a product which is not adulterated  one which meets all the standards established for a particular product but which is attended with a known risk to the consumer  and a product which is, in fact, adulterated and defective  that is, which does not meet the standards established for this particular product  and which would, because of such unknown and undetectable defect, produce a harmful effect upon any consumer thereof. The product in the McLeod case was in the former category; the product with which we are here concerned is in the latter category... ."
It is therefore clear that under the law in Florida at the time this cause of action arose, this transaction constituted a sale of a product intended for human consumption and the defendant, as the producer of the blood, is subject to strict liability.
Accordingly, the decision of the District Court is quashed and the cause remanded to said Court for further proceedings not inconsistent with the holding herein.
It is so ordered.
ROBERTS, Acting C.J., and ERVIN and McCAIN, JJ., concur.
DEKLE, J., dissents.
NOTES
[1] 154 So.2d 169 (Fla. 1963).
[2] 257 So.2d 51 (Fla.App.3rd 1972).
[3] Community Blood Bank, Inc. v. Russell, 196 So.2d 115 (Fla. 1967); Mercy Hospital, Inc. v. Benitez, 257 So.2d 51 (Fla. App.3rd 1972); White v. Sarasota County Public Hospital Board, 206 So.2d 19 (Fla.App.2d 1968), and Hoder v. Sayet, 196 So.2d 205 (Fla.App.3rd 1967).
[4] 196 So.2d 115, 118 (Fla. 1967).
[5] Id. at 119.
[6] Green v. American Tobacco Co., 154 So.2d 169, 170 (Fla. 1963).
[7] 174 So.2d 736 (Fla. 1965).
[8] Section 402A, Comment (k).
[9] Community Blood Bank, Inc. v. Russell, 196 So.2d 115, 120 (Fla. 1967).