## No. C-505

### St. Luke's Hospital, a Colorado corporation v. Margaret E. Schmaltz
(534 P.2d 781)

Decided May 5, 1975.

Wood, Ris & Hames, P.C., Eugene S. Hames, for petitioner.

Mason, Reuler and Peek, P.C., Rosanne M. Hall, Maurice Reuler, for respondent.

Lewis and Roca, Douglas L. Irish, Paul G. Ulrich, for amicus curiae Blood Services.

Charles C. Nicola, for amicus curiae Belle Bonfils Memorial Blood Center.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Certiorari was granted to review the decision of the Colorado Court of Appeals in *Schmaltz v. St. Luke's Hospital,* 33 Colo. App. 351, 521 P.2d 787. We reverse the judgment of the court of appeals.

Respondent's claims against petitioner hospital arose out of her contention that she was infected with serum hepatitis as a result of a number of whole blood transfusions given to her without her knowledge or consent during surgical procedures at the hospital. The complaint alleged that the blood transfused was defective and in an unreasonably dangerous condition, thereby resulting in the disease she contracted. She alleged four claims for relief in the nature of negligence, strict liability, res ipsa loquitur, and breach of warranty.

The district court upon motion of petitioner dismissed all claims for relief except that of negligence. Respondent chose not to pursue her negligence claims and upon stipulation this claim was dismissed with prejudice.

Upon appeal, the court of appeals affirmed the dismissal of the res ipsa loquitur claim, but reversed the dismissal of the claims based on strict liability and breach of warranty, and remanded the cause to the district court for further proceedings on those claims.

Since the time of the transaction, in December 1969, which gave rise to the claims for damages in this case, the general assembly enacted section 13-22-104, C.R.S. 1973, effective March 11, 1971, which declares the public policy of this state as follows:

"*Minors – transplants and transfusions – declaration of policy –*

*limit on liability*. (1) The availability of scientific knowledge, skills, and materials for the transplantation, injection, transfusion, or transfer of human tissue, organs, blood, or components thereof is important to the health and welfare of the people of this state. Equally important is the duty of those performing such service or providing such materials to exercise due care under the attending circumstances to the end that those receiving health care will benefit and adverse results therefrom will be minimized by the use of available and proven scientific safeguards. The imposition of legal liability without fault upon the persons and organizations engaged in such scientific procedures may inhibit the exercise of sound medical judgment and restrict the availability of important scientific knowledge, skills, and materials. It is, therefore, the public policy of this state to promote the health and welfare of the people by emphasizing the importance of exercising due care, and by limiting the legal liability arising out of such scientific procedures to instances of negligence or willful misconduct.

"(2) The donation, whether for or without valuable consideration, the acquisition, preparation, transplantation, injection, or transfusion of any human tissue, organ, blood, or component thereof for or to a human being is the performance of a medical service and does not, in any way, constitute a sale. No physician, surgeon, hospital, blood bank, tissue bank, or other person or entity who donates, obtains, prepares, transplants, injects, transfuses, or otherwise transfers, or who assists or participates in donating, obtaining, preparing, transplanting, injecting, transfusing, or transferring any tissue, organ, blood, or component thereof from one or more human beings, living or dead, to another living human being for the purpose of therapy or transplantation needed by him for his health or welfare shall be liable for any damages of any kind or description directly or indirectly caused by or resulting from any such activity; except that each such person or entity remains liable for his or its own negligence or willful misconduct."

We note that in forty-three other states statutes have been adopted which in effect preclude the imposition of legal liability without

fault in blood transfusion cases.[1]

The issue presented to us is whether prior to the enactment of the statute a hospital, which furnished defective blood for transfusion to a patient who was injured as a result thereof, was liable either under the doctrine of strict liability or the theory of breach of warranty. This question has not heretofore been considered by this court. The issue of liability, however, under the breach of warranty theory was decided in *Sloneker v. St. Joseph's Hospital,* 233 F. Supp. 105 (1964 D.C. Colo.), where the court rejected the claim for damages, holding that no Colorado precedent existed to suggest that this court would reach a decision contrary to the majority view which denies such a claim.

There is a split of authority on the question of liability. However, clearly the majority of jurisdictions deny such claims against hospitals or blood banks, based either on the theory of strict liability in tort or breach of warranty: *White v. Sarasota County Public Hospital Board,* 206 So.2d 19 (1968 Fla. App.), *cert. denied,* 211 So.2d 215; *Hoder v. Sayet,* 196 So.2d 205 (1967 Fla. App.); *Lovett v. Emory University, Inc.,* 116 Ga. App. 277, 156 S.E.2d 923; *Balkowitsch v. Minneapolis War Memorial Blood Bank, Inc.,* 270 Minn. 151, 132 N.W.2d 805; *Sarah Brody, Executrix v. Overlook Hospital,* 66 N.J. 448, 332 A.2d 596; *Baptista v. St. Barnabas Medical Center,* 109 N.J. Super. 272, 262 A.2d 902, *aff'd,* 57 N.J. 167, 270 A.2d 409; *Perlmutter v. Beth David Hospital,* 308 N.Y. 100, 123 N.E.2d 792, *reh. denied,* 308 N.Y. 812, 125 N.E.2d 869; *Dibblee v. Dr. W. H. Groves Latter-Day Saints Hospital,* 12 Utah 2d 241, 364 P.2d 1085; *Gile v. Kennewick Public Hospital Dist.,* 48 Wash. 2d 774, 296 P.2d 662, 59 A.L.R.2d 761; *Koenig v. Milwaukee Blood Center, Inc.,* 23 Wis. 2d 324, 127 N.W.2d 50. The lead-

---

[1]Alabama, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin and Wyoming.

ing cases allowing such claims are *Cunningham v. MacNeal Memorial Hospital,* 47 Ill.2d 443, 266 N.E.2d 897, 45 A.L.R.3d 1353; *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867.

In our view, the reasoning of the majority of case law leads us to the conclusion that public policy did not require the imposition of liability without fault on hospitals on the basis of either strict liability or breach of warranty. We are persuaded by the rationale expressed in the leading case on the question, *Perlmutter v. Beth David Hospital, supra,* wherein the supplying by a hospital of blood for transfusion to a patient was viewed as only incidental to the basic function of the hospital, that of providing medical services through trained personnel and specialized facilities, for the care and treatment of the patient in an effort to restore his health. In contrast, the minority view holds that the transfusion of blood involves a commercial sale, where warranties of fitness and merchantable quality may attend the transaction and give rise to a breach of warranty claim, or the doctrine of strict liability may be imposed when the blood sold was defective and in an unreasonably dangerous condition. *Cunningham v. MacNeal, supra.*

The minority view was adopted by the court of appeals, which criticized as unrealistic the concept that the hospital is only furnishing a service rather than selling a product.

We disagree with the court of appeals and believe the more realistic view of the relationship between a hospital and a patient is not that of a commercial transaction involving a seller and a buyer, wherein a quantity of blood is sold for a price, but rather that the essence of the hospital-patient relationship is one in which "* * * the patient bargains for, and the hospital agrees to make available, the human skill and physical material of medical science [whole blood for transfusion purposes] to the end that the patient's health may be restored," as expressed in *Perlmutter v. Beth David Hospital, supra,* and the numerous cases which follow it.

In this particular case, it is difficult to envision a sale of blood where the allegations common to each of respondent's claims asserted that the transfusions were performed without the consent or knowledge of respondent. It is fundamental that commercial sales are ordinarily based on contract and involve a

"consensual nexus" between the parties, wherein the seller offers a product for sale at a price and the buyer has a choice to buy or not. Although respondent's complaint alleges that petitioner "sold" blood for the purposes of transfusion, such being essential to raise the issue of warranty, the totality of the allegations does not change the true character of the transaction from that of furnishing medical services to that of a simple sale. We simply do not view it as realistic to hold the transfusion of blood, in these circumstances, is a sale of a product.

Respondent's strict liability claim is subject to the same infirmity. Likewise fundamental to such a claim is the sale of a product. *Restatement, Second, Torts,* § 402A; *Bradford v. Bendix-Westinghouse Auto Air Brake Co.,* 33 Colo. App. 99, 517 P.2d 406. The threshold question to the liability of such a claim is a sale in fact of the marketed product. What we have heretofore stated in this respect is applicable to the strict liability claim. The transaction between petitioner and respondent, in our view, was one for medical services and not the sale of a product.

As stated by the decision herein of the court of appeals, at the time of the transaction in question there were no decisions of this court bearing upon the problem presented by this case. Nor was there any declaration, either legislative or judicial, of the public policy in this area.

We agree with the dissent of Judge Enoch, where he questioned the wisdom of adopting a rule broadening the application of the tort doctrine of strict liability and liability for breach of warranty to encompass the transaction here, involving the hospital-patient blood transfusion situation; especially so, when within fifteen months after the transaction here involved our general assembly by statute specifically enunciated a declaration of public policy limiting liability to cases involving negligence or willful misconduct. We decline to adopt the broader rule for the purposes of this case and hold that at the time of the transaction herein there was no basis in our law for recovery of damages on the theory of strict liability or for breach of warranty.

We affirm the judgment of the court of appeals, which affirmed the dismissal by the trial court of respondent's purported separate claim based on the theory of res ipsa loquitur. We would observe, however, that res ipsa loquitur is not an independent

substantive cause of action. Rather, it is a rule of evidence affecting the burden of proceeding which is peculiar to the law of negligence. Whether or not it is applicable in any case depends on the factual context out of which the negligence claim arises. In negligence cases involving blood transfusions, the applicability of the evidentiary rule would therefore depend upon the peculiar facts of the particular case, and we express no hard and fast rule on this point.

The judgment of the court of appeals reinstating the warranty claim and the strict liability claim is reversed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE GROVES, and MR. JUSTICE ERICKSON concur in the portion of this opinion relating to res ipsa loquitur and dissent as to the remainder.