## No. C-1392

### Belle Bonfils Memorial Blood Bank
### v. Muriel Hansen and Carl Hansen

(579 P.2d 1158)

Decided June 12, 1978.

Hansen and Breit, John L. Breit, for petitioner.

Litvak and Karsh, Lawrence Litvak, Doris Besikof, Beverly B. Netzorg, for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

Upon the petition of Belle Bonfils Memorial Blood Bank, we granted certiorari to the Colorado Court of Appeals to review this decision in 40 Colo. App. 17, 570 P.2d 1309 (1977), and we now affirm.

The respondent, Muriel Hansen, while a patient at Mercy Hospital, received a blood transfusion consisting of several units of blood supplied by the petitioner blood bank. She filed this action against the blood bank, claiming she had contracted serum hepatitis as a result of the transfusion, and that the blood bank was liable by reason of strict liability and breach of implied warranties. The trial judge granted the blood bank's motion for summary judgment, basing its ruling upon *St. Luke's Hospital v. Schmaltz,* 188 Colo. 353, 534 P.2d 781 (1975). The court of appeals reversed holding that the opinion in *Schmaltz* did not apply here.[1]

In *Schmaltz* the plaintiff claimed that she contracted serum hepatitis from blood used in a transfusion, which blood was furnished by the defendant hospital.

There a majority of this court adopted the rationale of *Perlmutter v. Beth David Hospital,* 308 N.Y. 100, 123 N.E.2d 792 (1954). *Perlmutter* established the sales/service distinction for blood transfusion cases. In *Schmaltz* the majority followed *Perlmutter,* and held that a hospital was not *selling* blood but rather was *providing services.* It was stated:

"We are persuaded by the rationale expressed in the leading case on the question, *Perlmutter v. Beth David Hospital, supra,* wherein the supplying by a hospital of blood for transfusion to a patient was viewed as only incidental to the basic function of the hospital, that of providing medical services through trained personnel and specialized facilities, for the care and treatment of the patient in an effort to restore his health."

. . . .

"Although respondent's complaint alleges that petitioner 'sold' blood for the purposes of transfusion, such being essential to raise the issue of

---

[1] The transfusions in this case and in *Schmaltz* took place before the enactment of section 13-22-104, C.R.S. 1973. That statute attempts to preclude the use of any non-fault theory of recovery in any blood transfusion case against any defendant.

warranty, the totality of the allegations does not change the true character of the transaction from that of furnishing medical services to that of a simple sale. We simply do not view it as realistic to hold the transfusion of blood, in these circumstances, is a sale of a product."

In the instant case the blood bank was *selling* blood, and was not *supplying medical services* as was held as to the hospital in *Schmaltz. Rostocki v. Southwest Florida Blood Bank, Inc.,* 276 So. 2d 475 (Fla. 1973). While supplying blood may be "only incidental to the basic function of the hospital," it is not an incidental function for a blood bank. Rather than incidental, supplying blood for transfusions is the basic function of a blood bank. It is not a small part of an overall range of services provided, as in the case of a hospital.

This is a *sales* and not a *services* situation. As a "sale" is involved, we reach the question as to whether blood is a "product" such that §402A of the *Restatement (Second) of Torts* may be applied. §402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

This court expressly approved §402A in the case of *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975). We now follow *Cunningham v. MacNeal Memorial Hospital,* 47 Ill. 2d 443, 266 N.E.2d 897 (1970) and hold that blood is a "product" for purposes of §402A.[2] In *Cunningham, supra,* it was said:

"While whole blood may well be viable, human tissue, and thus not a manufactured article of commerce, we believe that it must in this instance be considered a 'product' in much the same way as other articles wholly unchanged from their natural state which are distributed for human consumption. [Citing cases]"

*See Rostocki v. Southwest Florida Blood Bank, Inc., supra. See generally Restatement (Second) of Torts §402A, Comment e; Franklin,*

---

[2] We do not comment as to the ramifications and provisions of the various exceptions to §402A (such as Comment k thereto) which are not before us.

*Tort Liability for Hepatitis: An Analysis and a Proposal,* 24 *Stan. L. Rev.* 439 (1972).

■ The plaintiff's claims on strict liability and breach of implied warranties should not have been dismissed on the basis of *Schmaltz.*

Judgment affirmed.

MR. JUSTICE LEE, MR. JUSTICE HODGES and MR. JUSTICE KELLEY dissent.

MR. JUSTICE LEE dissenting:

I respectfully dissent.

In my view, the reasoning of this court in *St. Luke's Hospital v. Schmaltz,* 188 Colo. 353, 534 P.2d 781, should control the disposition of this case. As noted by Judge Enoch in his dissent to the court of appeals decision, which reversed the trial court, our court in *Schmaltz, supra,* followed the majority view which denies claims "* * * against *hospitals or blood banks,* based either on the theory of strict liability in tort or breach of warranty * * * (citing cases)." (Emphasis added.)

Additionally, in *Schmaltz,* we observed that it would not be wise to adopt "* * * a rule broadening the application of the tort doctrine of strict liability and liability for breach of warranty to encompass the transaction here, involving the hospital-patient blood transfusion situation; especially so, when within fifteen months after the transaction here involved our general assembly by statute specifically enunciated a declaration of public policy limiting liability to cases involving negligence or willful misconduct* * * " This reasoning applies with equal force to the blood bank-recipient case here, particularly when the event giving rise to plaintiff's claim arose less than three months from the effective date of section 13-22-104, C.R.S. 1973. The majority apparently is adopting a new rule of tort law for the purpose of this one case.

For the reasons expounded in *Schmaltz,* the judgment of the court of appeals should be reversed and the judgment of the trial court affirmed.

I am authorized to say that MR. JUSTICE HODGES and MR. JUSTICE KELLEY join in this dissent.