Roger L. PERSICHINI,
Plaintiff-Appellant,

v.

BRAD RAGAN, INC., a North Carolina corporation, d/b/a C & C Tire Division, Defendant and Third-Party Plaintiff-Appellee,

v.

GOODYEAR TIRE AND RUBBER CO., Third-Party Defendant-Appellee.

No. 85SA113.

Supreme Court of Colorado, En Banc.

April 6, 1987.

Hall & Evans, L. Richard Musat, Alan Epstein, Denver, Williams, Trine, Greenstein, David W. Griffith, Boulder, for plaintiff-appellant.

Pryor, Carney & Johnson, P.C., Christopher N. Mammel, Englewood, for defendant and third-party plaintiff-appellee.

White and Steele, P.C., James M. Dieterich, John M. Palmeri, Denver, for third-party defendant-appellee.

QUINN, Chief Justice.

Roger Persichini, the plaintiff-appellant, appeals from a summary judgment entered in favor of Brad Ragan, Inc. (Brad Ragan), the defendant-appellee.[1] The court granted the motion for summary judgment on the basis that Persichini's claim was time-barred under section 13–80–127.5(1), 6 C.R.S. (1985 Supp.), the product liability statute of limitations. We affirm the judgment.

### I.

On November 6, 1978, Persichini was a member of the tire crew at the Climax Molybdenum Company (Climax) in Lake County, Colorado, and was seriously injured when he was removing a 7,000–pound tire from heavy earthmoving equipment used in Climax's mining operations. On April 26, 1984, more than five years after the date of his injury, Persichini filed suit against Brad Ragan, a tire distributing company which supplied Climax the Goodyear tires used on the truck, a Unit Rig Lectra Haul M–120–17, involved in Persichini's accident.[2] The complaint alleged that Brad Ragan had furnished Climax with a safety-training film called "The Earth Movers," produced by Goodyear Tire and Rubber Company (Goodyear), to assist Climax personnel "in training Climax employees in proper procedures for changing and removing tires on the Unit Rig M–120 truck," but that the tire removal procedures depicted in the film were unsafe if applied to the Unit Rig truck on which Persichini was working at the time of the accident; that if Persichini had not been following the procedures depicted in the film, the accident would not have occurred; and that Brad Ragan was negligent in using the film to teach tire removal procedures without providing a warning that the procedures depicted in the film were unsafe when applied to the Unit Rig Lectra Haul M–120–17.

Brad Ragan denied liability, pled various affirmative defenses including the statute

---

1. Because Persichini's appeal includes a challenge to the constitutionality of a statute, appellate jurisdiction properly lies in this court. § 13–4–102(1)(b), 6 C.R.S. (1973).

2. In 1980, Persichini filed a lawsuit in which he asserted alternate claims of strict liability under section 402A of the Restatement (Second) of Torts (1965) and negligence against the Unit Rig and Equipment Company, the manufacturer of the truck, Goodyear Tire and Rubber Company, which made the tire and, through one of Goodyear's subsidiaries, the rim assembly. The jury returned a verdict in favor of the defendants, and the court of appeals in an unpublished opinion affirmed the judgment. *Persichini v. Unit Rig & Equipment Company*, No. 83CA0691 (Colo. App., July 24, 1986).

of limitations, and filed a third-party complaint against Goodyear, the producer of the film, for indemnity and contribution in the event it was found liable to Persichini. Brad Ragan and Goodyear thereafter moved for summary judgment on the basis that Persichini's claim was barred by the three-year limitation period of section 13–80–127.5(1), 6 C.R.S. (1985 Supp.), which applied to actions brought against manufacturers or sellers of products for personal injury caused by or resulting from the manufacture or sale of the product. In support of its summary judgment motion, Brad Ragan filed the affidavit of Charles Adams, its sales representative. Adams' affidavit, which was uncontroverted, stated that Brad Ragan was the major supplier of Goodyear tires to Climax for use in its mining operations; that Adams had conducted general instructional seminars at Climax in order to familiarize "first-line supervisors" with the various aspects of tire care and safety procedures; that on approximately three occasions he showed the film "The Earth Movers," which he borrowed from the Goodyear district office, in order to familiarize supervisory personnel with the functions of tire crews; and that "the only manner in which the film 'The Earth Movers' has been utilized by Brad Ragan has been in connection with distribution and sale of large earth mover tires to customers or prospective tire customers of Brad Ragan."

The district court entered summary judgment in favor of Brad Ragan and Goodyear, ruling that Persichini's action was a "product liability action" which was time-barred by section 13–80–127.5(1), 6 C.R.S. (1985 Supp.):

> In examining the pleadings, the briefs, and the affidavits filed in this action it is clear to the court that the film was supplied to Climax in connection with its sale

of tires. Ragan sold tires for large earth movers which had to be installed on earth moving equipment. Ragan provided a film which demonstrated the method to be used when putting its product on earth moving equipment. If that instruction was unsafe it was a "failure to warn" or a "failure to provide proper instruction" for the use of the tires it sold. Section 13–80–127.5, C.R.S., exhibits the legislature['s] clear intent to include actions such as that asserted by plaintiff in the instant case "regardless of the substantive legal theory or theories upon which the action is brought." Plaintiff's claims for relief were asserted more than three years after the incident giving rise to them and they are barred by section 13–80–127.5, C.R.S.

In appealing from the summary judgment, Persichini argues that his lawsuit against Brad Ragan is not "a product liability action" within the intendment of section 13–80–127.5(1) because the film "The Earth Movers" was not a "product" and, alternatively, because Brad Ragan was not a "seller."[3] He follows this argument with the claim that section 13–80–127.5(1), if applicable at all to this case, violates equal protection of the laws as guaranteed by the United States and Colorado Constitutions.

## II.

■ Before addressing the merits of Persichini's arguments, we briefly review the statutory scheme which establishes a limitation period for product liability actions. Section 13–21–401(2), 6 C.R.S. (1986 Supp.), which was enacted in 1977 as part of an act addressing various aspects of product liability litigation, ch. 199, sec. 2, § 13–21–401, 1977 Colo.Sess.Laws 819, 820, defines a "product liability action" as follows:

---

**3.** Persichini also alleged in his complaint that Brad Ragan, Inc., which was engaged in the business of selling tires and had provided the film as part of its business, was strictly liable under section 402B of the Restatement (Second) of Torts (1965), for misrepresenting the the safe and proper tire-changing procedures in connection with the sale of its product. Summary judgment was entered against Persichini on that

claim, but no issue is raised on that aspect of the district court's ruling. Indeed, Persichini in his brief now concedes that, in light of his contention that Brad Ragan was not a "seller" of films within the intendment of section 13–80–127.5(1), his strict liability claim for misrepresentation under section 402B was properly dismissed.

"Product liability action" means any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product.

This same definition is incorporated in the three-year statute of limitations in section 13–80–127.5(1), 6 C.R.S. (1985 Supp.), which also was enacted as part of the same 1977 act dealing with product liability, ch. 199, sec. 1, § 13–80–127.5, 1977 Colo.Sess.Laws 819, 819, and states:

Notwithstanding any other statutory provisions to the contrary, all actions except those governed by section 4–2–725, C.R.S., brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product shall be brought within three years after the claim for relief arises and not thereafter.[4]

In keeping with the principle that it is the nature of the right sued upon and not necessarily the particular form of action or the precise character of the relief requested that ordinarily will determine the applicability of a particular statute of limitations to the case at issue, *Schafer v. Aspen Skiing Corp.*, 742 F.2d 580, 582 (10th Cir. 1984); *Association of Owners, Satellite Apartment, Inc. v. Otte*, 38 Colo.App. 12, 15, 550 P.2d 894, 896 (1976), sections 13–21–401(2) and 13–80–127.5(1) recognize that product liability actions may take many forms premised on any one or more of numerous legal theories, including, for example: the negligent design, manufacture, or labeling of a product, *see Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978); strict liability in tort under section 402A of the Restatement (Second) of Torts (1965) for a defective product unreasonably dangerous to users by reason of a failure to provide directions or warnings as to its use, *see Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975); and strict liability of a seller under section 402B of the Restatement (Second) of Torts (1965) for misrepresenting a material fact concerning the character or quality of a chattel sold by the seller, *see American Safety Equipment Corp. v. Winkler*, 640 P.2d 216 (Colo.1982). By incorporating into the three-year limitation period of section 13–80–127.5(1) the statutory definition of "product liability action" in section 13–21–401(2), and by expressly excluding from section 13–80–127.5(1) only those actions governed by the four-year period of limitations created by section 4–2–725 of the Uniform Commercial Code for breach of a sales contract, the legislature made manifest its intent to encompass all forms of product liability actions against manufacturers and sellers of products, other than the section 4–2–725 exclusion, within the three year limitation period "regardless of the substantive legal theory or theories upon which the action is brought."

■ In the absence of a clear expression of legislative intent to the contrary, a statute of limitations specifically addressing a

---

4. In 1986 the legislature repealed and reenacted, with amendments, article 80 of title 13, Colorado Revised Statutes. Ch. 114, sec. 2, § 13–80–101 *et seq.*, 1986 Colo.Sess.Laws 695. The present version of the statute of limitations for actions against manufacturers or sellers of products is codified at § 13–80–106, 6 C.R.S. (1986 Supp.), and it is substantially the same as the former section 13–80–127.5(1), except that the limitations period has been reduced from three years to two years.

particular class of cases will control over a more general or catch-all statute of limitations. *See Schafer,* 742 F.2d at 582; *Southard v. Miles,* 714 P.2d 891, 897 (Colo. 1986); *Association of Owners, Satellite Apartment, Inc.,* 38 Colo.App. at 15, 550 P.2d at 897. The only statute other than section 13–80–127.5 that conceivably might apply to this case is section 13–80–110(1)(g), 6 C.R.S. (1973), which establishes a six-year limitation period for a negligence action under the general category of "actions on the case." [5] Since there is no dispute that Persichini's lawsuit against Brad Ragan accrued on November 6, 1978, and was not filed until April 26, 1984, his claim would obviously be time-barred under section 13–80–127.5(1) if indeed it qualifies as a "product liability action" against a "seller" of the "product" causing the injury.[6] If, on the other hand, Persichini's claim against Brad Ragan is not a "product liability action" against the "seller" of the "product" causing the injury, then his lawsuit is not time-barred since it is within the six-year limitation period of section 13–80–110(1)(g).

### III.

■ Persichini contends that his lawsuit is not a "product liability action" under section 13–80–127.5(1) for two reasons: (1) the film "The Earth Movers" on which his cause of action is based was not a "product;" and (2) his claim is not based on Brad Ragan's role as "seller" of a product, but rather on Brad Ragan's negligence in rendering a service to its tire customers. While summary judgment is proper only when the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, *e.g., Continental Airlines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987); *Mishek v. Stanton,* 200 Colo. 514, 616 P.2d 135 (1980), our review of the record before us convinces us that the district court properly granted summary judgment in this case.

### A.

■ A "product liability action," as section 13–80–127.5(1) expressly recognizes, can be predicated on a seller's failure to provide adequate instructions in regard to the use of the product. *See, e.g., Anderson v. Heron Engineering Co.,* 198 Colo. 391, 604 P.2d 674 (1979); *Hiigel,* 190 Colo. 57, 544 P.2d 983. Persichini's negligence claim against Brad Ragan arose out of and was based on Brad Ragan's conduct in selling a product—Goodyear tires—to

5. Section 13–80–110, 6 C.R.S. (1973) states:

(1) Except as otherwise provided in section 4–2–725, C.R.S. 1973, the following actions shall be commenced within six years after the cause of action accrues, and not afterwards:

(a) All actions of debt founded upon any contract or liability in action;

(b) All actions upon judgments rendered in any court not being a court of record;

(c) All actions for arrears of rent;

(d) All actions of assumpsit, or on the case founded on any contract or liability, express or implied;

(e) All actions of waste and for trespass upon land;

(f) All actions of replevin, and all other actions for taking, detaining, or injuring goods or chattels;

(g) All other actions on the case, except actions for slander and for libel.

Presumably by virtue of the reference in subsection (g) to "actions on the case," which at common law were generally actions to recover damages for torts which were not committed with force or in which the injury was not immediate but consequential, Black's Law Dictionary 29 (5th ed. 1979), this six-year statute of limitations has been regarded as the limitations period generally applicable to tort actions, including those alleging negligence. *See, e.g., Schafer,* 742 F.2d at 581; *Miehle Co. v. Smith-Brooks Printing Co.,* 303 F.Supp. 501, 502 (D.Colo.1969) (both cases applying Colorado law); *Duncan v. Schuster-Graham Homes, Inc.,* 194 Colo. 441, 446, 578 P.2d 637, 640 (1978).

Like section 13–80–127.5(1), this section was repealed and reenacted in 1986. (*See* note 4, *supra.*) Under the present statutory scheme, the general six-year statute of limitations applies only to certain actions relating to debts, and to actions for arrears of rent. § 13–80–103.5, 6 C.R.S. (1986 Supp.). Negligence actions are now included among the actions governed by a two-year statute of limitations. § 13–80–102, 6 C.R.S. (1986 Supp.).

6. A cause of action for injury to person or property accrues on the date the injury and its cause are known or should have been known by the exercise of reasonable diligence. § 13–80–108(1), 6 C.R.S. (1986 Supp.); *see generally Mastro v. Brodie,* 682 P.2d 1162 (Colo.1984); *Criswell v. M.J. Brock & Sons, Inc.,* 681 P.2d 495 (Colo.1984).

Climax and in concomitantly failing to provide Climax with proper instructions in connection with the use of the product. Indeed, the very theory of liability underlying Persichini's claim was that the tire was an unsafe product precisely because of the allegedly defective film. Since the film was an integral part of the product sold for purposes of imposing liability on Brad Ragan, we conclude that Persichini's negligence claim was clearly a "product liability action" under section 13–80–127.5(1).

### B.

■ Similar considerations lead us to conclude that Brad Ragan was a "seller" of a product. Section 13–21–401(3), 6 C.R.S. (1986 Supp.), which was enacted as part of the same act creating the three-year statute of limitations for product liability actions, defines a "seller" as "any individual or entity, including a manufacturer, wholesaler, distributor, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption." The mere furnishing of some service in relation to a product sold is not determinative of the ultimate character of the transaction as one for the sale of services rather than the sale of goods. The controlling criterion, in our view, is whether the primary purpose of the sales transaction was the sale of goods with the rendition of labor or service only incidentally involved or whether, in contrast, the rendition of services was the primary or dominant purpose of the sale. *See Colorado Carpet Installation, Inc. v. Palermo,* 668 P.2d 1384, 1388 (Colo.1983) ("primary purpose" test adopted in determining whether contract was for sale of goods or performance of services for purposes of section 4-2-201(1), 2 C.R.S. (1973), which requires a "writing" for sale of goods for price of $500 or more); *St. Luke's Hospital v. Schmaltz,* 188 Colo. 353, 358–59, 534 P.2d 781, 784 (1975) (defective blood which hospital transfused into patient during surgi-

cal procedures was only incident to hospital's "basic function" of providing medical services and, hence, blood transfusion not a sale of a "product" for purposes of strict liability under section 402A or breach of warranty under U.C.C.).

■ The showing of the film "The Earth Movers," as demonstrated by the uncontroverted affidavit of Charles Adams, was an integral part of Brad Ragan's role as supplier and seller of Goodyear tires to Climax. While the showing of the film might be generically characterized as a form of service, Adams' affidavit nonetheless demonstrates that this service was only performed "in connection with distribution and sale of large earth mover tires to customers or prospective tire customers of Brad Ragan," and, as such, was only incidentally related to the sale itself. Since the record fails to demonstrate any issue regarding the fact that Brad Ragan furnished the film to Climax in connection with its sale of tires, we have no hesitation in concluding that Brad Ragan qualified as a "seller" of a product within the intendment of section 13–80–127.5(1).

### IV.

■ We turn then to Persichini's claim that section 13–80–127.5(1) violates the equal protection guarantees of the United States and Colorado Constitutions. U.S. Const. amend. XIV; Colo. Const. art. II, § 25.[7] In the absence of a statutory infringement on a fundamental right or the creation of a suspect class, neither of which is involved here, equal protection of the laws is satisfied if the statutory classification has a reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest. *E.g., Lee v. Colorado Department of Health,* 718 P.2d 221, 227 (Colo.1986); *Branson v. City and County of Denver,* 707 P.2d 338, 340 (Colo. 1985). The party challenging the statutory classification bears the burden of proving

---

7. Colo. Const. art. II, § 25, provides that no person shall be deprived of life, liberty or property, without due process of law. Our cases have held that Colorado's constitutional guarantee of due process of law includes the right to

equal protection of the laws. *E.g., Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo. 1986); *City of Montrose v. Public Utilities Comm'n,* 629 P.2d 619 (Colo.1981); *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980).

beyond a reasonable doubt that the statutory classification is indeed unreasonable, or, if reasonable, is unrelated to any legitimate governmental objective. *Lee v. Colorado Department of Health,* 718 P.2d at 227. Persichini argues that section 13–80–127.5(1) lacks a rational basis in fact because it exempts claims for breach of warranty from the three-year limitation period but does not similarly exclude product liability actions based on negligence.[8] We reject Persichini's constitutional argument.

▮ In our view there is a reasonable basis in fact for distinguishing between a warranty claim under the Uniform Commercial Code and a product liability action in negligence. At the time of the events in question, section 4–2–725, 2 C.R.S. (1973), stated, in pertinent part, as follows:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. This period of limitation may not be varied by agreement of the parties.[9]

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made; except, that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.[10]

**8.** Persichini relies on *Austin v. Litvak,* 682 P.2d 41 (Colo.1984), which considered an equal protection challenge to the medical malpractice statute of limitations, for his rational basis argument. His reliance on *Austin* is misplaced for two reasons. First, *Austin's* equal protection analysis represented the views of only a plurality of the court, the majority having concluded that the medical malpractice statute of limitations did not violate equal protection of the laws. Second, the plurality opinion, on which Persichini relies, predicated its equal protection analysis on the statutory exceptions for "foreign object" claims and "knowing concealment" claims but not claims predicated on "negligent misdiagnosis." Finding no reasonable basis in fact for this differential treatment, the plurality concluded that the statutory scheme created an arbitrary classification. *Austin,* 682 P.2d at 50. In contrast to *Austin,* and as we discuss in the text, there is a reasonable basis in fact for excepting a breach of warranty claim in connection with a contract for the sale of goods from the three-year period of limitations established in section 13–80–127.5(1).

**9.** Section 4–2–725(1) was amended in 1986, ch. 114, sec. 5, § 4–2–725, 1986 Colo.Sess.Laws 695, 702, to provide that "[a]n action for breach of any contract for sale must be commenced within the time period prescribed in section 13–80–101, C.R.S." Section 13–80–101(1)(a), 6 C.R.S. (1986 Supp.), establishes a three-year limitation period for "[a]ll contract actions, including personal contracts and actions under the 'Uniform Commercial Code,' except section 4–6–111," which addresses bulk transfers under the Uniform Commercial Code. We note, however, that section 13–80–102(1)(b), 6 C.R.S. (1986 Supp.), provides a two-year limitation period for "[a]ll actions for strict liability, *breach of warranty,* or failure to instruct or warn" (emphasis added). We need not resolve here the precise scope of the two-year period of limitations in section 13–80–102(1)(b) for warranty claims, and its effect, if any, on the three-year period of limitations for breach of contract actions under the Uniform Commercial Code. We note in passing, however, that the law is quite unsettled in deciding which of two limitation periods might be applicable to a personal injury claim resulting from a breach of warranty. Some courts have held that an action for personal injuries resulting from a breach of warranty is governed by the limitation period in the Uniform Commercial Code. *E.g., Saraniero v. Safeway, Inc.,* 540 F.Supp. 749 (D.Kan.1982); *Williams v. West Penn Power Co.,* 502 Pa. 557, 467 A.2d 811 (1983). Other courts have held that when personal injuries are sustained from a breach of warranty, the claim is in tort and is subject to the statute of limitations for personal injury actions, not the limitation period of the Uniform Commercial Code. *Witherspoon v. General Motors Corp.,* 535 F.Supp. 432 (W.D.Mo. 1982); *Franzen v. Deere & Co.,* 334 N.W.2d 730 (Iowa 1983). A third approach is that any doubt as to whether the claim should be treated as a personal injury action or a breach of warranty should be resolved by giving the plaintiff the benefit of the longer period of limitations. *E.g., Teel v. American Steel Foundries,* 529 F.Supp. 337 (E.D.Mo.1981).

**10.** Under section 4–2–318, 2 C.R.S. (1973), "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty." The effect of section 4–2–318, therefore, is to "enlarge the potential liability of a seller by extending the warranty to other persons in the distributive chain" without derogating "any right or remedy resting on negligence." U.C.C. § 4–2–318, Colorado Comment; *see Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo. 1984).

The purpose of the limitation provisions of section 4–2–725 is

[t]o introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred.

U.C.C. § 4–2–725, Official Comment. Section 4–2–725 thus "takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four-year period," which is "within the normal commercial record-keeping period," as the most appropriate to modern business practice. *Id.* The intended effect of section 4–2–725, therefore, is to provide sellers with a definite and uniform starting and termination date for possible warranty liability on a contract of sale—the starting date being the date of tender of delivery except where the warranty extends to future performance—even though such rule might be somewhat disadvantageous to the buyer because of the buyer's lack of awareness of a breach. *See Dart Industries, Inc. v. Adell Plastics, Inc.*, 517 F.Supp. 9 (S.D.Ind.1980); 5 R. Anderson, Uniform Commercial Code § 2–725:4 (1984).

In contrast to a product liability claim in negligence, an action for breach of warranty under the Uniform Commercial Code is governed by a unified statutory scheme directed to the sale of goods, and includes detailed provisions with respect to express and implied warranties, the exclusion or modification of warranties, and the remedies available for those injured or damaged by breach of warranties. §§ 4–2–313 to –318, 2 C.R.S. (1973). In light of this integrated statutory scheme applicable to warranty claims arising out of a contract for the sale of goods, it is completely logical that warranty actions otherwise subject to the provisions of the Uniform Commercial Code should be governed by the limitations period set forth in that statutory scheme rather than the limitations period of section 13–80–127.5(1). *Wieser v. Firestone Tire and Rubber Co.*, 596 F.Supp.

1473, 1475 (D.Colo.1984). By excepting a breach of warranty claim from the provisions of 13–80–127.5(1), the legislature obviously sought to preserve the statutory integrity of the Uniform Commercial Code, both in terms of remedies available for breach of express and implied warranties and the limitation period applicable to such claims.

We thus conclude that there is a rational basis in fact to support the legislative decision to exclude actions governed by section 4–2–725 from the limitation period applicable to other product liability actions against manufacturers and sellers of products and to treat product liability actions in negligence differently from warranty actions under the Uniform Commercial Code. We are equally satisfied, and indeed Persichini concedes the point, that section 13–80–127.5(1) is reasonably related to a legitimate governmental objective—that of providing manufacturers and sellers of products with a significant degree of certainty regarding the potential period of liability exposure under various theories of tort law for injuries and damages caused by their products. *See Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo. 1982).

The judgment is affirmed.